# IN THE COURT OF APPEALS OF IOWA

No. 17-1771
Filed January 24, 2018

**IN THE INTEREST OF M.M. and M.M.,**
**Minor Children,**

**J.M., Father,**
     Appellant,

**J.H., Mother,**
     Appellant.

---

Appeal from the Iowa District Court for Dubuque County, Thomas J. Straka, Associate Juvenile Judge.

A mother and father separately appeal a juvenile court order terminating their parental rights. **AFFIRMED ON BOTH APPEALS.**

Stuart G. Hoover of Blair & Fitzsimmons, P.C., Dubuque, for appellant father.

Sharon D. Hallstoos of Hallstoos Law Office, L.L.C., Dubuque, for appellant mother.

Thomas J. Miller, Attorney General, and Anagha Dixit, Assistant Attorney General, for appellee State.

Sandra P. Trevino of Jensen & Trevino, P.C., East Dubuque, Illinois, guardian ad litem for minor children.

Considered by Danilson, C.J., and Doyle and Mullins, JJ.

**MULLINS, Judge.**

A mother and father separately appeal a juvenile court order terminating their parental rights to their two children, born in May 2014 and June 2015. The father contends his bond with the children should have precluded termination.[1] The mother avers the juvenile court erred in (1) finding clear and convincing evidence established the statutory grounds for termination, (2) concluding termination was in the children's best interests, and (3) declining to grant her additional time to work towards reunification.

**I.      Background Facts and Proceedings**

The parents came to the attention of the Iowa Department of Human Services (DHS) in May 2014 when their daughter was born and tested positive for methamphetamine (meth) and amphetamines. In October, following ongoing issues concerning the mother's substance abuse, a removal order was obtained, and the daughter was adjudicated a child in need of assistance (CINA). In April 2015, the State petitioned for termination of both parents' parental rights with respect to their daughter. In June, the juvenile court found the State sufficiently established the grounds for termination of both parents' parental rights to the daughter, but the court ultimately granted the mother's request for an extension

---

[1] The father also states he "does not entirely agree with all of the conclusions of the" juvenile court regarding the statutory grounds for termination. Because he provides no supportive facts, argument, or analysis on this passive assignment of error, we consider any challenge to the statutory grounds for the termination of his parental rights waived. *See* Iowa R. App. P. 6.903(2)(g)(3); *see also In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000) ("A broad, all encompassing argument is insufficient to identify error in cases of de novo review."); *Hyler v. Garner*, 548 N.W.2d 864, 876 (Iowa 1996) ("[W]e will not speculate on the arguments [a party] might have made and then search for legal authority and comb the record for facts to support such arguments."); *Ingraham v. Dairyland Mut. Ins. Co.*, 215 N.W.2d 239, 240 (Iowa 1974) ("To reach the merits of this case would require us to assume a partisan role and undertake the appellant's research and advocacy. This role is one we refuse to assume.").

of time to work towards reunification and continued the termination proceedings.[2] The daughter was eventually returned to the mother's custody, and the case was closed in March 2016.

In June 2016, only a few months after the first case was closed, DHS received allegations that the mother was using meth in the children's presence. Drug tests were performed on the children and parents; the children and father tested positive for meth, but the mother tested negative. The father advised DHS that the mother did something to her hair in order to manipulate the outcome of her test. Voluntary services were provided to the family, and a safety plan was put in place that required the father to move out of the family home and disallowed him from having unsupervised contact with the children. However, the father continued to reside in the home.

Further allegations of drug use on the mother's part surfaced in March 2017. Following those allegations, the mother and both children tested positive for meth. The State filed CINA petitions as to both children and applied for removal. On March 23, the juvenile court ordered the children be removed from the parents' care after which DHS placed the children in foster care. In May, the children were adjudicated CINA. Both parents relapsed in the same month. Throughout the CINA case, the mother frequently missed her scheduled drug-test appointments. Since her initial involvement with DHS, the mother frequently denied she used meth. She later admitted to using the substance on a number of occasions.

---

[2] The parents' son was born just a few days before the juvenile court granted the mother an extension. The mother admitted at the termination hearing in this matter that she used meth while she was pregnant with her son.

In September, as a result of the parents' inability to maintain sobriety, lack of honesty with DHS, and inability to properly care for the children, the State petitioned for the termination of their parental rights. Just two days before the termination hearing in October, the mother was cited for possession of drug paraphernalia. The court ultimately terminated both parents' parental rights as to both children pursuant to Iowa Code section 232.116(1)(h) and (*l*) (2017). Both parents appeal.

## II. Standard of Review

We review termination-of-parental-rights (TPR) proceedings de novo. *In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016). "We are not bound by the juvenile court's findings of fact, but we do give them weight, especially in assessing the credibility of witnesses." *Id.* (quoting *In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014)). Our primary consideration is the best interests of the children. *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006).

## III. Analysis

### A. Grounds for Termination

The mother contends the statutory grounds for termination were not proven by clear and convincing evidence. "On appeal, we may affirm the juvenile court's termination order on any ground that we find supported by clear and convincing evidence." *In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010). The juvenile court terminated the mother's parental rights pursuant to Iowa Code section 232.116(1)(h) and (*l*). As to the former provision, the mother only argues "the State failed to prove that the children could not be safely returned to [her] care" at the time of the termination hearing. *See* Iowa Code § 232.116(1)(h)(4);

*A.M.*, 843 N.W.2d at 111 (indicating the statutory language "at the present time" refers to the termination hearing).

The State presented evidence regarding the mother's substance-abuse history, which included multiple relapses. Of particular concern to this court is the mother's meth use that occurred around the time the juvenile court granted her an extension in the prior TPR case and the relapse occurring only a few months after the closure of the prior CINA and TPR cases. A pattern is evident— the mother is able to control (or conceal) her drug use when her parental rights are in jeopardy, but as soon as she emerges from the legal trenches with her parental rights intact, she recommences her drug use. We are not convinced by the mother's self-serving testimony at the termination hearing that she has remained clean for several months and the children can therefore be returned to her care. Only time will tell if the mother will be able to overcome her drug habits and be a suitable parent. With this mother's relapse history in mind, she needs to do much more than stay clean for a few months while merely going through the motions in order for her children to be returned to her. *See In re A.B.*, 815 N.W.2d 764, 778 (Iowa 2012) (noting a parent's past conduct is instructive in determining the parent's future behavior); *In re C.K.*, 558 N.W.2d 170, 172 (Iowa 1997) (stating that when considering what the future holds if a child is returned to the parent, we must look to the parent's past behavior because it may be indicative of the quality of care the parent is capable of providing in the future); *see also M.W.*, 876 N.W.2d at 224 (indicating a parent must do more than simply go through the motions and check things off on her to do list).

Upon our de novo review, we find the evidence clear and convincing that at the time of the termination hearing the mother was in no position to have these children returned to her care. We therefore affirm the juvenile court's termination of the mother's parental rights under Iowa Code section 232.116(1)(h).

B.  Best Interests and Statutory Exceptions to Termination

The mother contends termination was not in the children's best interests. In support of her argument, the mother points to her "special bond" with the children, the children's bond with extended family members, and the potential for emotional trauma to the children if those bonds are severed. The father similarly argues, pursuant to Iowa Code section 232.116(3)(c), his bond with the children should have served as an exception to termination.

"In considering whether to terminate the rights of a parent . . . [we] give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2). Regarding exceptions to termination, "[t]he court need not terminate the relationship between the parent and child if . . . the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship." Id. § 232.116(3)(c). The application of the statutory exceptions to termination is "permissive not mandatory." M.W., 876 N.W.2d at 225 (quoting A.M., 843 N.W.2d at 113).

It is undisputed that both parents share a strong bond with the children and that the severance of those bonds will be difficult for the children. Problematic, however, is the parents' chosen course of conduct since DHS

initially became involved in these children's lives. These parents have been given opportunity after opportunity to put their children first and obtain and maintain sobriety. The parents have exhibited varying and inconsistent degrees of progress throughout the first and second sets of CINA and TPR proceedings, but every instance of progress has consistently been followed by relapse. "It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *A.B.*, 815 N.W.2d at 777 (quoting *In re P.L.*, 778 N.W.2d 33, 41 (Iowa 2010)). "[A]t some point, the rights and needs of the children rise above the rights and needs of the parent." *In re C.S.*, 776 N.W.2d 297, 300 (Iowa Ct. App. 2009).

These children need stability and permanency. Their best interests are not served by giving these parents yet another chance at permanent sobriety, as it would require the children to remain in a CINA limbo, which both children have already been in for most of their lives. "We hold no crystal ball, and to some extent, the [best-interests] determination must be made upon past conduct." *In re M.M.*, No. 16-1685, 2016 WL 7395788, at *4 (Iowa Ct. App. Dec. 21, 2016). Based on the parents' past conduct and inability to consistently put their children before their substance-abuse habits, we conclude termination of the parents' parental rights is in the children's best interests. We also note the record reveals the children are assimilating well into their new foster-to-adopt home. Contrary to what the parents have been able to provide for the children, adoption will give these children a chance at stability and permanency, which is in their best

interests. *Cf. M.W.*, 876 N.W.2d at 224–25 (concluding termination was in best interests of children where children were well-adjusted to home with their caregivers, the caregivers were "able to provide for their physical, emotional, and financial needs," and the caregivers were prepared to adopt the children).

We agree with the juvenile court that termination is in the children's best interests and the application of statutory exceptions to termination should not be applied in this case.

C.    Extension

Finally, the mother contends the juvenile court erred in declining to grant her additional time to work towards reunification.  She believes if she was provided additional time, it is likely the children could have been returned to her care within two to three months from the time of the termination hearing.

If, following a termination hearing, the court does not terminate parental rights but finds there is clear and convincing evidence that the child is a CINA, the court may enter an order in accordance with section 232.104(2)(b).  Iowa Code § 232.117(5).  Section 232.104(2)(b) affords the juvenile court the option to continue placement of a child for an additional six months if the court finds "the need for removal . . . will no longer exist at the end of the additional six-month period."  The juvenile court was unable to make such a finding.  The court stated:

> The parents' past behavior indicates that a[n] extension of time will not resolve the adjudicatory harms to the extent the children could be returned to their care.  The parents have already had three years of services to address the same exact issues.  A prior case went to a termination and, at that time, an extension was granted and the case was closed.  However, just two-and-a-half months later the same issues again appeared.  Mother has done absolutely nothing in the present case to convince the Court the children could be returned to her care with another extension.

Upon our de novo review, we are also unable to make a finding that the need for removal would no longer exist after the mother's requested extension. Therefore, we affirm the juvenile court's denial of the mother's request for an extension of time to work towards reunification.

We affirm the termination of both parents' parental rights as to their children.

**AFFIRMED ON BOTH APPEALS.**